Judge Robertson
delivered the opinion of the Court.
being In 1816, Jesse Noland executed his note to Richard Johnson for $100; on which (it assigned to Shadrack Williams,) a'judgment at law was .afterwards obtained against him.
Noland then filed his bill in chancery, alleging that Johnson owed him the amount of a note assigned to Noland on Johnson, before the assignment of the note to Williams; that shortly after the execution of the $100 note, he hired to Johnson a negro for the interest of the $100, which negro was worth $10 a month, and remained with Johnson six months. The bill also very unadvisedly mingles with these facts, claims against Johnson and others, as heirs of Vincent Turner, of whose estate Noland was administrator, charges that they owe him for expenses and time devoted to the business of the estate, and the management of suits in which all the heirs were parties; makes them all defendants, and prays for an account and general settlement. An injunction was prayed for and obtained, restraining the enforcement of Williams’s judgment.
The answers deny that the heirs owe Noland any thing, but insist that he has never settled his administration accounts, or paid them their distributive in *10 lerests ; and being made cross bills, pray a decree against Noland for an account and distribution. Ai.d Johnson denies that he ever agreed to set off the interest of the $100 against the hire of the negro; but admits that he had the negro of Noland aft,er the note for $100 was executed.
Decree of the circuit court.
Set off in equity, allow id only when there is a connexion bet.w -on the demands, or complainant hai not adequate remedy at law.
Allegation, that complainant let defendant have a slave ■worth $10 per month, for the interest of $100, and the slave thus served defendant for six m-inths, is not sufficient 1,1 nmke a th« Statuteef against usury.
*10 Noland agreed, on the record, to'abandon his claim in this suit against the defendants as heirs of Vincent Turner; and thereupon, on hearing, his injunction was dissolved, and bill dismissed with-costs and damages-; and a decree rendered that he should account to the heirs on their cross bills for whatever might be ascertained to be due by an auditor appointed by the decree. To reverse the decree dissolving his injunction and dismissing his bill, Noland prosecutes his writ «of error.
The injunction was improvidently granted. The 'individual claims charged on Johnson-and others, in' the bill, could not be applied by the Chancellor, as credits on the judgment, in favor o^the assignee, ¡even if it had been right to join them all in the same bill,) unless, before assignment, there had been an agreement to allow them as credits, or they had formed parts of the “res gesta” with the consideration of the note. The note, and these demands, were separate and independent transactions. Even against Johnson, if the judgment had been in his name, and to his use, eqQity would not decree a credit or set off, without an allegation and proof of Noland’s inability at law, to enforce their collection. The bill shews no claim to credit, except the hire of the negro.
In granting the injunction, therefore, the chancelor should have taken cognizance only of the claim to credit for the interest, during the time Johnson enjoyed the use of Noland’s slave: And this according to the allegations of the hill and principles of equity, would have produced only three dollars; -for Noland only claims credit -for six months use of 'the negro; which,-according to his own declarations, was to discharge the interest for six months. It is true, that he allege^ that the negro was worth $10 n month, and therefore claims in his bill a credit for $00.
An usurious agreement alleged!’
n^jurfsdlo-11 tiou to grant iniunrtimi for three* 0 ars-
Caperton, for plaintiff; Turner, for defendant.
But as be does not charge usury,-be can only claim credit for the legal interest, which he says was paid fev the use of his slave. Brown vs. Heard, 3rd 391. As it was apparent then, on the face of his bill, that Noland could only ask relief against the judg meat, to the extent of the interest on the $ 100 for six ttionths. (which is $3); the injunction was improperly awarded, and the Court had no jurisdiction over so small a sum; and that it had not, appears by the aliegations of the bill, when tested by the well settled doctrines of equity. Hence the bill ought not to have been sustained.
But on the merits, it is very doubtful whether, if the amount had been sufficient to give jurisdiction, relief could have been given, by a perpetuation of the injuncti'on for that amount, whatever it might be. In sup port of the allegation of a contract to set off hirfe against interest, there is only one positive witness, and he says that Noland told him, shortly after he took his negro from Johnson, that he' had paid Johnson the money which he owed him. This witness does not know that the Ínteres! which was to be extinguished by ihe hire of the negro, was the interest of the $100 note; nor is this, fact proved by any of the witnesses. They speak indefinitely, and refer to a date anterior to that of the note. It is extremely doubtful' on a scrutiny of all the testimony, whether the negro did not work for the interest of some other debt than that of $ 100; and very probable, that his hire should not be estimated at more than $4 or $5-a month; and that he was in the possession of Johnson less than three months; and consequently the interest claimed to be credited, would be reduced to $1 60; as therefore the court improvidently granted the injunction; as it is very doubtibl whether the plaintiff is entitled to any credit on the judgment; and if entitled to any, it is almost certain that it would not exceed $1 50 cts.; and Johnson, from any thing that appears to us, is able to pay that, (if due.) we have no hesitation in affirming the decree below.
The defendant must recover his costs and ten per cent, on the damages below.
Petition for a re-hearing.
Mr. Caperton, Counsel for the Plaintiff respectfully solicits a re-hearing in this case.